IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| UNITED STATES OF AMERICA | CRIMINAL CASE NO. |
|---|---|
| v. | 1:11-CR-0060-4-ODE-RGV |
| ALBERT ESPINAL | |

ORDER

This criminal case is currently before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Russell G. Vineyard [Doc. 66] filed on August 29, 2011. In the R&R, Magistrate Judge Vineyard recommended denying Defendant Albert Espinal's motion to suppress evidence and statements [Doc. 31]. On September 13, 2011, Defendant Espinal timely filed his objections to the R&R [Doc. 71]. For the following reasons, Defendant Espinal's objections [Doc. 71] are OVERRULED, Judge Vineyard's R&R [Doc. 66] is ADOPTED IN ITS ENTIRETY, and Defendant Espinal's motion [Doc. 31] is DENIED.

I. Factual Background and Procedural History

Defendant Espinal has not objected to Judge Vineyard's findings of fact as stated in the R&R. The Magistrate's version of the facts is not clearly erroneous and therefore is adopted by this Order. Because the factual background is laid out in detail in the R&R, it is not necessary to recite all of the facts again here. Relevant facts will be discussed below in the analysis of Defendant's objections and the review of the R&R.

II. Discussion

A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a de novo review of those portions of the R&R to which Defendant has timely and specifically objected. The Court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); United States v. Raddatz, 447 U.S. 667, 673-74 (1980). However, for a party's objections to warrant de novo review, he "must clearly advise the district court and pinpoint the specific findings that [he] disagrees with." United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). The Eleventh Circuit has noted that "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).

The remainder of the R&R, to which neither party offers specific objections, will be assessed for clear error only. See Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1373 (N.D. Ga. 2006) (Story, J.) ("[I]ssues upon which no specific objections are raised do not so require de novo review; the district court may therefore 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge[,]' applying a clearly erroneous standard.") (quoting 28 U.S.C. § 636(b)(1)).

B.  **Defendant Espinal's Motion to Suppress Evidence and Statements**

In Defendant Espinal's motion to suppress [Doc. 31], he moves the Court to suppress evidence seized and statements made during the stop and arrest of Mr. Espinal on July 9, 2009. Mr. Espinal contends that he was detained by officers of the Gwinnett County Police Department (GCPD) without the constitutionally required justification when he was found asleep in the passenger seat of a pick up truck parked in a McDonald's parking lot during the early morning of July 9, 2009.

After an evidentiary hearing conducted by Judge Vineyard and post-trial briefing by Mr. Espinal and the government, Judge Vineyard recommended that Mr. Espinal's motion to suppress be denied as to all evidence and statements at issue. Magistrate Judge Vineyard found that the initial approach and interaction between the officers and Defendant Espinal was a citizen encounter that required no objective justification [Doc. 66 at 17]. Judge Vineyard further found that subsequent to this lawful encounter, "a series of events quickly unfolded that provided Sgt. Brustein with reasonable suspicion to briefly detain Espinal, and thereafter resulted in probable cause for his arrest" [Id.].

Espinal objects to Judge Vineyard's conclusion as to the legality of the initial encounter and the existence of reasonable suspicion to justify what Espinal contends was a Terry stop [Doc. 71 at 5-6].

Thus, the threshold inquiry is whether the initial contact with Espinal was a consensual encounter that did not implicate the Fourth Amendment or whether it rose to a Terry stop requiring

reasonable suspicion to be constitutional. An interaction with the police changes from a voluntary encounter to a Terry stop when a reasonable person would no longer feel free to leave or otherwise terminate the encounter with the police because "the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Michigan v. Chesternut, 486 U.S. 567, 573 (1988); Florida v. Bostick, 501 U.S. 429, 434 (1991); Terry v. Ohio, 392 U.S. 1, 20 n.16 (1968). If the Court determines the encounter falls short of a Terry stop, then it does not implicate the individual's Fourth Amendment rights and the officer needs no objective justification for approaching the citizen. If the encounter is a Terry stop, then the officer must show reasonable articulable suspicion that criminal activity is afoot. Terry, 392 U.S. at 30.

In this case, Sergeant Brustein and Officer Dickerson, two on-duty, uniformed officers with the GCPD, were directed on July 9, 2009 by GCPD to respond to a McDonald's in Gwinnett County to look into a suspicious vehicle in the parking lot [Doc. 55 at 8]. At 1:40 a.m., they found a pick-up truck with its windows rolled down and parked in a parking space in the corner of the lot, with Defendant Espinal asleep in the passenger seat. Sergeant Brustein parked the marked police vehicle behind Defendant's truck such that Defendant would not have been able to exit his parking spot [Doc. 55 at 50-52]. Sergeant Brustein then exited his vehicle, approached the Defendant, and woke him up. He asked Defendant why he was in the parking lot and sought his identification.

The Court's task is to determine the nature of the encounter at this moment in time. Whether the officers needed reasonable suspicion to initiate this encounter with Espinal depends on whether the encounter, at this moment, was still consensual or whether Mr. Espinal had effectively been seized. Espinal contends that because the officers were in uniform, drove a marked police car, and blocked Espinal's vehicle from leaving its parking spot, they were "restricting his freedom, had he wished to leave the area" [Doc. 71 at 4]. However, the Eleventh Circuit has held that an individual in a parked car is not seized simply because a police officer parks his car in a way that blocks the individual from departing by car. Miller v. Harget, 458 F.3d 1251, 1258 (11th Cir. 2006) ("The fact that Officer Harget turned on his 'window lights,' in addition to parking behind the . . . vehicle, does not necessarily make his approach of [the defendant] a coerced detention."). In his objections, Espinal acknowledges the holding in Miller but argues that "this court must look at the totality of the circumstances," specifically that two uniformed officers, in a marked patrol car, approached Defendant and asked for identification [Doc. 71 at 5]. Espinal also notes that the officers had weapons but concedes that the weapons were not drawn [Id.]. Indeed, there is no evidence or allegation that Sergeant Brustin's initial exchange with Espinal involved any show of force, authority, or other indication "that compliance with the officer's request might be compelled." United States v. Mendenhall, 446 U.S. 544, 554 (1980). This Court concludes that at the moment Sergeant Brustin approached Mr. Espinal's parked

vehicle, no objective[1] justification was required because the encounter was not yet a detention.[2]

Although the original motion to suppress challenged both the justification for the initial encounter with Mr. Espinal and the scope and duration of the subsequent detention, Mr. Espinal objects only to the R&R's characterization of the initial encounter as consensual and, assuming it was a Terry stop, the sufficiency of the officers' justification. This Court has reviewed de novo the conclusion in the R&R that the Fourth Amendment was not implicated when the officers initiated contact with Mr. Espinal.

Because the initial questioning of Mr. Espinal, as well as the request for his identification, did not require reasonable suspicion, the Court need not consider the remainder of Mr. Espinal's objections about whether the justification offered by the government rose to the level of reasonable suspicion.

---

[1] Espinal also argues that the officers acted with intent to restrict Espinal's freedom of movement [Doc. 71 at 2]. However, the R&R correctly notes that an officer's unexpressed intent to detain the individual is irrelevant because the standard for determining whether a seizure has occurred is an objective one. See Doc. 66 at 13-14; Mendenhall, 446 U.S. at 555.

[2] It is also well established law that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her [belongings]-as long as the police do not convey a message that compliance with their requests is required." Bostick, 501 U.S. at 434-35 (internal citations omitted). Thus, Sergeant Brustein's initial questions and request for identification from Mr. Espinal fell well within the scope of a voluntary encounter.

The remainder of the Magistrate's analysis in the R&R has been reviewed for clear error. Finding none, the R&R [Doc. 66] is ADOPTED IN ITS ENTIRETY.

III. Conclusion

Having reviewed de novo those portions of the R&R to which Defendant objected, Defendant Espinal's objections [Doc. 71] are OVERRULED, and Judge Vineyard's R&R [Doc. 66] is ADOPTED IN ITS ENTIRETY. Accordingly, Defendant's motion to suppress evidence and statements [Doc. 31] is DENIED.

SO ORDERED this __10__ day of January, 2012.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE